## REPUBLIC SUPPLY CO. OF CALIFORNIA v. RICHFIELD OIL CO. OF CALIFORNIA.

### No. S–125.

District Court, S. D. California, Central Division.

July 27, 1932.

Keyes & Erskine and Olds & Olds, all of San Francisco, Cal., and Meserve, Mumper, Hughes & Robertson, of Los Angeles, Cal., for Rodman.

Gibson, Dunn & Crutcher, H. F. Prince, Homer D. Crotty, and Robert F. Schwarz, all of Los Angeles, Cal., for Richfield Oil Co. and McDuffie.

William J. De Martini, of Los Angeles, Cal., for Richfield Oil Co.

H. W. O'Melveny, Walter K. Tuller, and Louis W. Myers, all of Los Angeles, Cal. (O'Melveny, Tuller & Myers, of Los Angeles, Cal., of counsel), for Security First Nat. Bank.

Alexander Macdonald and Robert H. Edwards, Jr., both of Los Angeles, Cal. (Bauer, Macdonald, Schultheis & Pettit, of Los Angeles, Cal., of counsel), for Bondholders' Committee.

JAMES, District Judge.

The plaintiff above named on January 15, 1931, filed its complaint as a creditor of the defendant, alleging in brief that the condition of the affairs of the defendant was such as to threaten great loss to its creditors unless a receiver should be appointed to take charge of the business. It alleged that its petition in that behalf was for the benefit of all creditors and asked that a receiver be forthwith named. The defendant corporation did not oppose the petition but gave its consent that a receiver be appointed. William C. McDuffie was appointed on said date as such receiver and from thence on has continued so to act.

Security First National Bank of Los Angeles is trustee under a certain indenture made to secure first mortgage bonds issued by the defendant. At the time of the appointment of the receiver there were outstanding of these bonds in amount approximately $24,000,000. Although there was a condition of default as to payments to be made on account of said bonds, the trustee took no action

to foreclose the same. Shortly prior to June 6, 1932, J. G. Rodman, alleging that he was the owner of ten bonds of the defendant in the denomination of $1,000 each, filed his petition asking leave to intervene and cause the foreclosure to be made as against the property in the hands of the receiver in satisfaction of the bonded indebtedness. An order to show cause was issued against the receiver and the trustee. After the filing of the petition of Rodman and prior to the hearing on the order to show cause, the trustee presented its petition seeking leave by ancillary bill to proceed and foreclose the bond debt lien. The petitions mentioned were heard together.

Rodman based his claimed right to intervene and prosecute foreclosure on the facts as asserted by him, that the trustee had refused to take action after demand made and that the trustee was disqualified to act because it occupied the position of an unsecured creditor toward the defendant. It was conceded that an individual bondholder under the express terms of the trust indenture could not compel any action to be taken unless the trustee had neglected and refused to act after demand, or that the trustee had an interest which was adverse to the bondholders and one which would bias his action to their damage. The trust indenture particularly provided that after default had been made as to payments required of the defendant on account of the bonds, the trustee might in its discretion, or upon the written request of the holders of 25 per cent. in amount of bonds and coupons, proceed to take action for the foreclosure of the indenture or to take any other appropriate remedy as might seem most effectual. The indenture contained this further provision: "Section 2. No holder of any bond or coupon secured hereby shall have any right to institute any suit, action or proceeding at law or in equity for the foreclosure of this indenture or for the execution of any trust or power hereof or for the appointment of a receiver or for any other remedy under or upon this indenture, unless such holder previously shall have given to the Trustee written notice of an event of default; and unless also the holders of twenty-five per cent (25%) in amount of the bonds and coupons secured hereby then outstanding shall have made written request upon the Trustee and shall have afforded to it a reasonable opportunity either to proceed to exercise the powers hereinbefore granted, or to institute such action, suit or proceeding in its own name, and such notification and request hereby are declared in every such case, at the option of

the Trustee, to be conditions precedent to the execution of the powers and trusts of this indenture * * *."

It was neither alleged nor shown that Rodman, prior to the filing of his petition herein, made any demand upon the trustee to take the action desired. The affidavit made on behalf of the trustee showed affirmatively that no such demand had been made. Further, that no bondholder had made any demand to have action taken by the trustee. Two small bondholders had written to the trustee in a more or less informal way, but I am not of the opinion that such letters constitute any form of demand of which petitioner Rodman can rely upon in support of his petition. It is quite plain that the great body of bondholders have not expressed dissatisfaction with respect to the conduct of the trustee, and it is reasonably clear also that the trustee has at all times acted for the best interests of the creditors which it has represented under the trust indenture. The entire proceeding has been at all times under the notice of the court. At the time the receiver took charge of the defendant's property it was being conducted at a loss—the operative loss at that time amounted to approximately $900,000 per month. Under the receiver's management the operative loss has been changed to an operative profit. During the period of the receivership a total operative profit is shown amounting to approximately $5,000,000. The receiver has within the same time reduced his overhead charges in an amount approximating $4,000,000. It is true, of course, that the mere statement of operative profit amounts will not present a complete picture of the financial stability of the company's property, but it does illustrate conclusively the fact that the property to-day is in a much sounder condition, greatly improved in its organization, and of more worth by many hundreds of thousands of dollars than it was at the time the receiver took charge. These facts alone demonstrate that the delay by the trustee in foreclosing the bond lien has been of distinct advantage to all interests concerned.

Under the second heading of petitioner Rodman's complaint, to wit, that the trustee has an interest adverse to the bondholders in that it is an unsecured creditor of the defendant: The same situation existed at the time of the selection of the Security First National Bank as such trustee. The conflict of interests would not arise except in the presence of a dispute as to the amount and kind of property covered by the bond mortgage. If

such dispute does arise, then the court is competent to and has complete power in that direction to see that such dispute is settled by reference to a master or by hearing in open court. I can find no good reason within the claims of the Rodman petition why the holder of a small amount of bonds should be allowed to intervene and take the place of a trustee selected under definite terms and conditions as expressed in the trust indenture to care for the interests of the great number of bondholders who are making no complaint. The time, moreover, has arrived when the trustee is prepared to act on its own discretion and proceed with the foreclosure. The time has arrived, also, as that the receiver believes, that a plan of reorganization should be worked out. Some negotiations are pending to that end. The foreclosure proceeding will in no wise interfere with pending plans for reorganization but such proceedings may be of use, if not indispensable to the proper adjustment of interests if the sale of the assets is made.

The petition of J. G. Rodman for leave to intervene and file a complaint to foreclose is denied.

The petition of Security First National Bank for leave to file its bill of complaint to foreclose the trust indenture is granted. An exception is noted in favor of petitioner Rodman to the making of the orders stated.